**Mary GLOVER, et al., Plaintiffs–
Appellees,**

v.

**Perry JOHNSON, Director, Michigan
Department of Corrections, et al.,
Defendants–Appellants.**

**Nos. 98–1900, 98–2140.**

United States Court of Appeals,
Sixth Circuit.

Argued: Nov. 5, 1999

Decided and Filed: Dec. 8, 1999

of contempt with respect to this issue, one of three grounds on which the district court in 1996 had held Appellants in contempt, and we remanded the case for redetermination of sanctions, which had been set at $500, increasing to $5,000, per day. *Glover v. Johnson*, 138 F.3d 229, 245 (6th Cir.1998). A petition for rehearing was denied, and our mandate issued on June 8, 1998. Appellants argue that the district court's imposition of monetary sanctions in an amount as large as the higher level imposed in 1996, is precluded by this court's remand for the district court "to redetermine appropriate sanctions." *Ibid.* For the reasons given below, we affirm the order of the district court.

Deborah A. LaBelle (argued and briefed), Law Offices of Deborah LaBelle, Ann Arbor, Michigan, Michael J. Barnhart, Detroit, Michigan, for Plaintiffs–Appellees.

Lisa C. Ward (argued and briefed), Assistant Attorney General, Leo H. Friedman (briefed), Office of the Attorney General, Corrections Division, Lansing, Michigan, for Defendants–Appellants.

Before: GUY and BOGGS, Circuit Judges; and HOOD, District Judge.*

## OPINION

BOGGS, Circuit Judge.

Perry Johnson, Director of the Michigan Department of Corrections, and a number of subordinate correctional and other law enforcement officials ("Appellants"), appeal the district court's imposition of contempt sanctions in the amount of $5,000 per day, totaling $385,000, for the period from June 8, 1998 to August 24, 1998, during which time Michigan female prisoners were denied vocational training equal to that provided male prisoners, in contempt of the court's earlier orders. In March 1998, this court upheld the finding

## I

This action originated in 1977 and has generated numerous appeals and related suits. As has been noted, "[e]normous state resources and administrative efforts have been expended to deal with these lawsuits and injunctive actions." *Id.* at 255 (Wellford, J., concurring in part and dissenting in part).

The appeal before us concerns only one small part of that larger process. In 1996, the district court issued an order reflecting many years of findings, and affirmations on appeal, that the Michigan Department of Corrections ("the Department") was in noncompliance with its directives with respect to providing female prisoners with court access, and rehabilitative apprenticeship and vocational programs. *See Glover v. Johnson*, 931 F.Supp. 1360 (E.D.Mich. 1996). It ordered immediate compliance and found the Department in contempt for previous delays, assessing sanctions of $500 per day until all of the vocational programs it had ordered were in place, to increase after two and a half months to $5,000 per day. The same amounts were assessed in connection with access to

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

courts and apprenticeship programming, for a total in daily sanctions of $1,500, to increase after two and a half months to $15,000. On appeal, this court affirmed the lower court's contempt finding with respect to the vocational programs. 138 F.3d at 244. However, we reversed the district court's contempt finding with respect to access to courts and apprenticeship programming; therefore, the question of sanctions required revisiting. *Id.* at 244–45.

On remand, the district court re-examined the period in which the imposition of sanctions for failure to comply with its order respecting vocational programs would be appropriate, the accrual of sanctions having been stayed pending appeal. Although the Department presented affidavits at a July 21, 1998 hearing indicating at least partial compliance, or else efforts at compliance, the court issued an opinion on July 23, 1998 finding three of the mandated programs lacking. In an order dated August 3, 1998, it determined that sanctions should begin from June 8, 1998, the date this court's mandate issued, in the amount of $5,000 per day.

By August 25, 1998 the Department had paid $300,000 to the court in fines; on that day, it filed a motion to purge itself of contempt and presented an affidavit indicating full compliance. The court appointed a monitor to investigate. Based on his report, in an order issued on October 1, 1998, the court purged the Department of contempt as of August 24, 1998, but found that additional payment of $85,000 was due for the contempt up to that date.

The Department appeals both those orders and requests the return of $385,000.

## II

■ A district court's imposition of contempt sanctions is reviewed for abuse of discretion. *See Glover*, 138 F.3d at 243 (*citing Glover v. Johnson*, 934 F.2d 703, 710 (6th Cir.1991)). The magnitude of the sanctions imposed should be assessed by weighing the harm caused by noncompliance, "and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

■ Any factual findings made by the district court in reaching its decision are reviewed for clear error. *See, e.g. Johnson v. Jones*, 149 F.3d 494, 499 (6th Cir. 1998) (*citing Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1165 (6th Cir. 1996) (*citing Anderson v. City of Bessemer City*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985))). Under this standard, a district court's findings will only be set aside when the reviewing court is definitely and firmly convinced that a mistake has been made. *Ibid.* As long as the district court's view of the evidence is plausible in light of the entire record, it must stand, even though the reviewing court, had it been the finder of fact, might have judged the same evidence differently. *See Anderson*, 470 U.S. at 573–74, 105 S.Ct. 1504.

■ With the foregoing standards of review in mind, it quickly becomes clear that this appeal must fail on the merits. The district court examined an affidavit and heard arguments regarding the compliance or lack thereof of the Department, before deciding that the Department should be judged in contempt from June 8, 1998 onward. When the Department returned to court in August claiming that it was now fully compliant, the court appointed a monitor to investigate. It reviewed the monitor's findings before purging the contempt citation as of August 24, 1998, while ordering that an additional $85,000 be paid for contempt up to that date. These conclusions were both restrained and responsibly arrived at. Neither clear error in the court's findings of fact, nor any abuse of discretion in its holding the Department in contempt, is suggested by the record.

The sanction of $385,000 imposed by the district court was not intended as compen-

satory damages, but as a punitive measure designed to force the Department finally to comply with the court's lawful orders, after years of defiance and delay. It would seem to have succeeded, since the Department was found to have followed the court's order within ten weeks, by August 24, 1998. That satisfies the Supreme Court's effectiveness test, as quoted *supra* at 312, in *United Mine Workers*, 330 U.S. at 303–04, 67 S.Ct. 677.

When this court remanded the case for redetermination of the amount of contempt sanctions, we did so because, of the three areas in which the district court had found the Department in contempt, only one—the vocational programs at issue here—survived review. However, we never addressed whether the amounts imposed were excessive; Appellants' persistent assertion that this court, in remanding the case, regarded the district court's sanctions with respect to the vocational programs as excessive in themselves, is simply false. Moreover, in light of the Department's years of noncompliance, the district court's subsequent imposition of sanctions beginning only with June 8, 1998 was remarkably forbearant. The amount in question seems at last to have succeeded in capturing the Department's attention.

### III

■ Since the purpose of the sanctions was to produce Appellants' compliance with the district court's lawful order, their nature was clearly coercive, rather than compensatory. Appellants' contention that the amount is inappropriate because it fails to match a demonstrated loss by Appellees is therefore misplaced. *See TWM Manufacturing Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983) (listing two primary purposes of civil contempt: to compel obedience and to compensate injuries). The coercive and the compensatory purposes of civil contempt may well be, as here, alternatives; the latter need not be invoked to justify the former. *See In re Jaques*, 761 F.2d 302, 305 (6th Cir.1985):

> Generally, civil contempt may be either intended to coerce future compliance with a court's order, *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966), or to compensate for the injuries resulting from the noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)....

The State's recalcitrance, not the prisoners' damage, is what validates the sanction amount in this case.

In the course of the hearing held by the district court on September 29, 1998 there was some discussion of the appropriate disposition of the $300,000 that had been, and of the $85,000 that remained to be, collected. The money was being held in an interest-bearing account. The district court indicated that a final order as to this matter would be stayed pending this appeal; but the court, while recognizing the coercive nature of the sanction, indicated that it would be inclined to use the money for compensatory purposes, and to place it into a fund for the benefit, in some fashion, of the women inmates, rather than having it be paid to the U.S. Treasury. The court requested briefs from the parties involved as to the question of disposition, and indicated it would make a determination once this court had resolved the appeal. It is our view that the district court's intention to use the money by placing it in a fund for the women's benefit is proper. We commend to the district court the suggestion that such a fund be used for the purpose of defraying the future cost of the vocational programs ordered by the district court, and that the fund must not be used to reimburse the Department of Corrections for any past costs, nor for general overhead that would be incurred even if these programs did not exist.

### IV

The order of the district court is **AFFIRMED** and the case is **REMANDED**

for disposition of the amount collected pursuant to the citation of the Department of Corrections for contempt.