**SOUTHERN PACIFIC COMPANY,**
a corporation, Plaintiff,

v.

**CITY OF PORTLAND, a municipal corporation,**

and

**Frank Penepacker and Lillian E. Penepacker, his wife; Richard C. Stratford and Vera C. Stratford, his wife; Irvin A. Campbell and Helen Ruth Campbell, his wife; Edward C. Sammons; Lawrence R. Teeple and Adelia L. Teeple, his wife, Defendants.**

No. ʹ52–6662–HO.

United States District Court, D. Oregon.

June 8, 2004.

Carolyn L. Larson, Jeffrey M. Kilmer, Kilmer Voorhees & Laurick, PC, Portland, OR, for Plaintiffs.

Bruce A. Rubin, Justin C. Sawyer, Miller Nash LLP, Portland, OR, for Intervenors.

## ORDER

HOGAN, District Judge.

This proceeding arises from four lawsuits filed in the 1950s. Plaintiff Southern Pacific (now Union Pacific Railroad Company) brought this action seeking to stop the City of Portland from condemning a portion of Southern Pacific's right of way. Individual residents of the Eastmoreland and Westmoreland neighborhoods brought actions seeking to prohibit Southern Pacific's use of portions of its right of way for railroad purposes.

In 1956, the court entered a permanent injunction prohibiting Southern Pacific from constructing or maintaining trackage on portions of its right of way and restricting the remaining use of its right of way. Since the court's entry of the injunction, the individual homeowners have either moved or passed away.

Two entities have been formed to protect the interests of the neighborhood residents of the area affected by the injunction: the Eastmoreland Neighborhood Association (ENA) and Sellwood Moreland Improvement League (SMILE). The associations now seek to intervene asserting that Union Pacific has violated the decree.

ENA and SMILE move to intervene as of right or, in the alternative, for permissive intervention to enforce the court's October 22, 1956 judgment. ENA and SMILE also seek to substitute Union Pacific in the place of Southern Pacific as a defendant and to change the caption of this case to reflect the associations as plaintiffs, as successors in interest to the original defendants, and Union Pacific as defendant.

### A. Intervention

As a threshold matter, Union Pacific asserts that the neighborhood associations lack standing to intervene to obtain the remedies requested.

#### 1. Standing

In their motion to show cause, the associations seek: (1) a finding that Union Pacific is in contempt for violating the injunction dated

October 26, 1956; (2) a fine of $1,000,000 or some other sum for damages caused by Union Pacific's contempt; (3) Union Pacific's sequestration from all storage, holding, receiving and departure tracks within the area covered by the injunction; and (4) reasonable attorney fees.

Union Pacific argues that regardless of whether the neighborhood associations meet the requirements for intervention, the motion should be denied because they lack standing to seek the relief proposed and the requested relief is not available as a matter of law.

For purposes of intervention as of right, the associations argue that only a significantly protectable interest is required and for purposes of permissive intervention no independent jurisdiction is required to ask a court to enforce an existing injunction.

■ For purposes of intervention as of right, the associations argument that a showing of standing is not required is not well-taken. The associations do provide better authority with regard to permissive intervention. Permissive intervention ordinarily requires independent jurisdictional grounds. 7C Charles A. Wright, Arthur R. Miller, Mary K. Kane, Federal Practice and Procedure § 1917 at 466 (2nd ed.1986); *see also Blake v. Pallan,* 554 F.2d 947, 955–56 (9th Cir.1977). However, an independent jurisdictional basis is not required where intervenors do not seek to litigate a claim on the merits, i.e., where the intervenors only seek to enforce an injunction that a court retains jurisdiction to enforce. *See Beckman Indus., Inc. v. Internat. Ins. Co.,* 966 F.2d 470, 473 (9th Cir.1992). But the associations do not provide authority that standing is not required. Nonetheless, it appears that the associations meet the standing requirements.

The associations appear to have standing both in a representative capacity and to sue on their own behalf.

Article III of the Constitution limits the jurisdiction of federal courts to the "resolution of 'cases' and 'controversies'". *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United Separation of Church and State, Inc.,* 454 U.S. 464, 471,

102 S.Ct. 752, 70 L.Ed.2d 700 (1982). An aspect of the limitation of Article III is the doctrine of standing. *See, e.g., Valley Forge Christian College,* 454 U.S. at 471, 102 S.Ct. 752. Thus, in order to invoke the jurisdiction of this court, a party must first demonstrate that it has standing to challenge the conduct of a proposed party opponent. "[T]he standing question is whether [a] plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf". *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), *citing, Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (footnote omitted).

■ In order to establish the requisite standing, a party must demonstrate "at an irreducible minimum", (1) that it personally has suffered some actual or threatened injury (injury-in-fact); (2) that the injury can be traced to the challenged conduct of the proposed party opponent (causation) and (3) that the injury is likely to be redressed by a favorable judicial decision (redressability). *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. 752.

■ To meet the injury-in-fact requirement, a party must show a "distinct and palpable" injury. *Warth,* 422 U.S. at 501, 95 S.Ct. 2197. Threatened harm can provide the basis for a finding of injury-in-fact. *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. 752. Where the harm is threatened, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough". *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), *quoting, Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) (other citations omitted). "However, [a] plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged . . . conduct and the injury or threat of injury must be both 'real and immediate,' not conjectural or hypothetical." *Los*

*Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

■ Organizations are entitled to sue on their own behalf for injuries they have sustained. *E.g., Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In determining whether an organization has standing the inquiry is the same as that for an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal-court jurisdiction? *See Havens Realty Corp. v. Coleman* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214.

■ Here the purposes of the associations are alleged to be directly impeded by Union Pacific's activities that purportedly violate the court's injunction. Among ENA's goals is to enhance the livability of the Eastmoreland neighborhood. Among SMILE's goals is to foster a community that is safe to live in and to address land use, transportation, and crime prevention concerns of its residents. The court, in granting the injunction, found that Southern Pacific's activities produced loud and protracted noise and disturbances day and night, created unsightly accumulation of equipment, and brings undesirable characters to the neighborhood that substantially interferes with residents use and enjoyment of their property. The associations allege violation of the injunction causing such interference and thus impeding the associations from reaching their stated goals. *See, id.* at 379, 102 S.Ct. 1114 (Plaintiff HOME has allegedly been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME also has allegedly had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices. If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income home seekers, the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests.)

Indeed, the associations have been engaged in negotiations over the years regarding the injunction and the associations have expended effort in those negotiations for the purposes of pursuing their stated goals.

■ An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ Union Pacific argues that ENA and SMILE fail to meet the third requirement[1] because they seek damages requiring individualized proof of losses from each member. Union Pacific grounds this argument on the claim for $1,000,000 which they assert is based on diminution of property values caused by Union Pacific's violation of the injunction. However, where a fine is sought for civil contempt, it may, in addition to serving the purpose of compensation for injuries, serve the purpose of compelling obedience to a court order.

Moreover, the type of sanction the court may assess for contempt is left to the discretion of the court and the associations seek a fine of $1,000,000 or such other sum as the court deems appropriate. Thus, a coercive fine is not foreclosed and the associations' memo in support of sanctions suggest a coercive fine as well as a compensatory fine. *See* Memo (# 4) at p. 7–8. Coercive fines need not be matched to any actual loss suffered by the members of ENA or SMILE. *See, e.g., Glover v. Johnson,* 199 F.3d 310, 313 (6th Cir.1999). Therefore, the individualized na-

---

1. And presumably concedes that the first two requirements are met. The injunction extends benefits to all residents of the neighborhoods and thus requirement one is met. Additionally, the very purpose of the associations is to protect the interests of the neighborhood residents and thus requirement two is met.

ture of he harm suffered is not the only issue at this stage of the proceedings, but it may be necessary to join individual members at a later stage if they wish to seek compensatory damages.[2] Moreover, the other two forms of relief requested (finding of contempt and sequestration) do not require the participation of the individual members.

Union Pacific next argues that the associations do not have the authority to bind the residents. This is only relevant if the court fines Union Pacific for individualized damages, but that would require the participation of the individuals. For now, the associations need only show an interest in enforcement of the injunction.

Union Pacific also argues that sequestration and divestment is not an available remedy. While the court finds the viability of this requested remedy suspect, especially as a coercive measure, it declines to rule on the issue at this stage.

ENA and SMILE meet the standing requirements of article III to the extent such requirements are necessary in addition to a showing of entitlement to intervene pursuant to Rule 24.

### 2. Intervention as of Right

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. civ. P. 24(a)(2).

■ Union Pacific argues that intervention cannot be permitted in this case because there is no potentially prejudicial "disposition" of an action because this case concluded decades ago. However, the action resulted in an injunction against Union Pacific and without intervention to enforce that injunction,

there is no other apparent means to stop Union Pacific from violating the injunction. All of the original named individuals have passed away.

Because the court always retains jurisdiction to enforce its own judgments and injunctions, there is an ongoing action, the disposition of which would impair the neighborhood associations' ability to protect their interests in the enforcement of the injunction without their participation.

Fed.R.Civ.P. 24(a)(2) provides for intervention by right when four conditions are met: (1) timeliness; (2) the proposed intervener has an interest relating to the subject of the action; (3) practical impairment of the proposed intervener's ability to protect that interest; and (4) inadequate representation by the parties to the action. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993). Rule 24 is construed broadly in favor of applicants. *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir.1990).

■ Timeliness is the threshold requirement for intervention as of right. *Id.* at 588. In determining timeliness, three factors are considered: the stage of the proceedings; the prejudice to other parties; and the reason for and the length of the delay. *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir.1986) *cert. denied*, 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). Any substantial lapse of time weighs heavily against intervention. *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir.1996).

Although this case concluded decades ago, it appears that until the merger of Southern Pacific into Union Pacific in 1996, the injunction was not violated. There appears to be no prejudice to the parties to the litigation.

■ Under Ninth Circuit precedent, the interest requirement of Rule 24(a)(2) is interpreted broadly in favor of applicants for intervention. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical threshold inquiry." *Greene v. United States*, 996 F.2d 973, 976

---

**2.** The associations also suggest that a fine for criminal contempt may be appropriate that could be a flat fine unrelated to individual loss. But criminal contempt does not appear appropriate in this case.

(1993). No specific legal or equitable interest need be established, the movant need only demonstrate a significantly protectable interest. *Portland Audubon Soc. v. Hodel,* 866 F.2d 302, 308–09 (9th Cir.), *cert. denied,* 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 577 (1989). ENA and SMILE, and their members have a significantly protectable interest in real property pursuant to the 1956 decree and are related to the original individual parties in that they are similarly situated and therefore also protected by the decree.

ENA and SMILE's interest will be impaired because if they are not allowed to intervene, Union Pacific effectively can ignore the injunction because the original individual parties are not present to enforce it. Thus, there is no one to adequately protect their interests.[3] Therefore, ENA and SMILE are permitted to intervene as of right.

### 3. Permissive Intervention

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order, the officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties . . . .

A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

Fed.R.Civ.P. 24(b) and (c).

■ Permissive intervention ordinarily requires: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action. *Beckman Indus., Inc. v. Internat. Ins. Co.,* 966 F.2d 470, 473 (9th Cir.1992).

#### a. Independent Ground for Jurisdiction

■ Where proposed interveners do not seek to litigate a claim on the merits, but rather, seek to modify a protective order, an independent jurisdictional basis is not needed. *Id.* Presumably, an independent ground for jurisdiction is not needed to enforce an injunction either. Moreover, diversity jurisdiction exists in this case.

#### b. Common Question of Law and Fact

ENA and SMILE seek to enforce the 1956 injunction and therefore bring no new questions of law. The factual damage issues regarding property in the affected area, to the extent they are or will be an issue, is common to the original claims of damage to property.

#### c. Timeliness

The motion is timely for the reasons stated above.

Therefore even assuming that intervention as of right is not appropriate, permissive intervention should be granted.

However, as noted above, the association may not intervene to raise damages particular to individual property owners. To the extent the associations have not received an assignment of rights with respect to such damages, intervention is limited to seeking a

---

**3.** Individual residents may seek to join as well. The associations argue that individual residents cannot afford to litigate, but the issue of individualized damages cannot be addressed in their absence. Thus, to the extent the individual residents are not made part of this litigation either personally or through an assignment of rights, the associations may only intervene to enforce the injunction and to seek a coercive fine for civil contempt to serve the purpose of compelling obedience to a court order. To the extent sequestration is appropriate for this purpose, the associations may seek that as well.

**644**

declaration of violation of the injunction, and civil contempt and coercive sanctions.

### B. Substitute Parties

Union Pacific does not object to it being substituted in the place of Southern Pacific. The motion is allowed to that extent

### C. Change Caption

The associations also seek to change the caption to reflect Union Pacific as defendant and the addition of ENA and SMILE. However, the proposed caption includes ENA and SMILE not as additional parties but as plaintiffs as "successors in interest to the original defendants ..." This is not necessary. The caption shall be changed to reflect ENA and SMILE as additional parties and switch Union Pacific to a defendant and the original individuals and ENA and SMILE to plaintiffs. However, it may be necessary at some point to add the current residents as successors in interest to the original individual residents should they wish to seek individualized compensatory damages for any violation of the injunction. Nonetheless, the associations have now presented evidence of at least one member assigning his rights to seek enforcement of the injunction to the associations which moots the compensatory damages issue with respect to representational standing with respect to this member.

### D. Postpone Proceedings

Following oral argument on the motion to intervene, the associations moved to postpone all proceedings regarding Union Pacific's motions for referral and to modify the injunction. Alternatively, the associations seek to postpone discovery related to the motions.

With respect to the motion to refer this matter to the Surface Transportation Board, it appears such motion should be determined early in the case. Therefore, the motion to postpone this motion is denied. With respect to the motion to modify the injunction, it appears that discovery with respect to contempt and its remedies and modification of the injunction will likely overlap. Accordingly, the motion is granted to the extent that the motion to modify the injunction will be set over so that the parties (including other necessary parties that may need to be joined in this action) can conduct appropriate discovery and more fully respond to the motion. A status conference is set for July 6, 2004, to set a discovery and briefing schedule with respect to the issues of contempt, possible sanctions, and modification. The issue of referral is to remain set for the July 6, 2004, oral argument calendar.

### CONCLUSION

For the reasons stated above, the motion of Eastmoreland Neighborhood Association and Sellwood Improvement League to intervene, substitute, and change caption (# 1) is allowed to the extent noted above. In addition, the intervenors' motion to postpone (# 46) is allowed in part as indicated above.