In the Matter of WILLIAM M. KUNSTLER, Petitioner, v THOMAS B. GALLIGAN, as Justice of the Supreme Court of the State of New York, Respondent.

First Department, June 18, 1991

### APPEARANCES OF COUNSEL

*Morton Stavis* of counsel *(Arthur Kinoy* and *Ronald L. Kuby,* attorneys), for petitioner.

*Lisa M. Evans* of counsel *(Robert Abrams, Attorney-General,* attorney), for respondent.

*David L. Lewis* for National Association of Criminal Defense Lawyers, *amicus curiae.*

*Richard A. Greenberg* of counsel *(Newman & Schwartz,* attorneys), for New York Criminal Bar Association.

*Joshua L. Dratel* for New York State Association of Criminal Defense Attorneys, *amicus curiae.*

### OPINION OF THE COURT

Per Curiam.

On August 18, 1990, Mr. Yusef Salaam was convicted, after a jury trial of the crimes of rape in the first degree (Penal Law § 130.35 [1]), assault in the first degree (Penal Law § 120.10 [3]), robbery in the first degree (Penal Law § 160.15 [3]), riot in the first degree (Penal Law § 240.06), and assault in the second degree (Penal Law § 120.05 [2], [6]) (3 counts), in the Supreme Court, New York County (Thomas B. Galligan, J.). Subsequently, on September 11, 1990, Justice Galligan sentenced Mr. Salaam, consecutively on the designated felonies as a juvenile offender, to an indeterminate prison term of 5 to 10 years. All of the crimes of which Mr. Salaam was convicted arose out of a series of attacks, on April 19, 1989, in Central Park, upon a female jogger, several male joggers, and other persons.

Thereafter, in November 1990, William M. Kunstler, Esq., moved pursuant to CPL 440.10, to vacate Mr. Salaam's conviction, on the ground that, during his trial, a juror read press accounts of that trial and informed his fellow jurors about them. Further, Mr. Kunstler submitted a supplemental affirmation, in support of the motion, requesting Justice Galligan to recuse himself from considering the motion.

The subject motion was one of a number of matters to be disposed of, on December 20, 1990, in Criminal Term, Part 59 courtroom, by Justice Galligan.

After the Clerk of Part 59 called the Mr. Salaam matter, Mr. Kunstler and the Assistant District Attorney noted their appearances, and Justice Galligan promptly informed Mr.

Kunstler that the motion was denied, no hearing would be directed on same, and a copy of the motion decision would be available at the end of the day.

This colloquy then took place between Mr. Kunstler and Justice Galligan:

"MR. KUNSTLER: It is outrageous. You will not have an evidentiary hearing despite all the law that calls for it?

"THE COURT: I will not hear oral argument. Call the next case.

"MR. KUNSTLER: You have exhibited what your partisanship is. You shouldn't be sitting in court. You are a disgrace to the bench.

"THE COURT: Sir, I hold you in contempt of court."

After being held in contempt, Mr. Kunstler continued to argue, as follows:

"MR. KUNSTLER: You can hold me in anything you wish. I am outraged.

"THE COURT: I am giving you an opportunity to be heard right now.

"MR. KUNSTLER: I am saying this, judge. Every case in the world says you should hold a hearing in order to determine whether outside influences affected a juror. Every case there is. I submitted them to you.

"Even when a juror falls asleep, the Second Department has held there should be a hearing. And for you to deny it without a hearing. I think it is outrageous. You are violating every standard of fair play.

"THE COURT: I am holding you in contempt of court. You are fined $250 or 30 days in jail".

Subsequently, on December 20th, Justice Galligan issued a written decision denying the CPL 440.10 motion, as well as the request that he recuse himself from deciding that motion, and a written decision detailing the reasons for holding Mr. Kunstler in summary criminal contempt.

In March 1991, Mr. Kunstler (petitioner), by counsel, instituted, pursuant to CPLR article 78, a petition to annul the summary criminal contempt order of Justice Galligan (respondent Justice), Thereafter, a Justice of this court granted a stay, not on the merits, pending determination of the petition, and granted permission to argue orally.

The petitioner contends, in substance, that the order should be annulled, since his conduct did not justify a finding of

contempt, and if it did, he was not given an opportunity to be heard in defense or extenuation, before the respondent Justice imposed punishment.

Pursuant to Judiciary Law § 750 (A), a Justice or Judge of a court of record, such as respondent Justice, is given the power to punish a person for criminal contempt, who commits certain acts, including:

"1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. * * *

"3. Wilful disobedience to its lawful mandate.

"4. Resistance wilfully offered to its lawful mandate".

Further, pursuant to Judiciary Law § 751 (1), contempts, such as those specified in the Judiciary Law § 750 (A) (1), (3) and (4), "committed in the immediate view and presence of the court, may be punished summarily", by a fine of $1,000 or 30 days in jail or both, at the discretion of the court.

Additionally, Judiciary Law § 755 provides that "[w]here the offense is committed in the immediate view and presence of the court * * * it may be punished summarily. For that purpose, an order must be made by the court * * * stating the facts which constitute the offense and which bring the case within the provisions of this section, and plainly and specifically prescribing the punishment to be inflicted therefor".

Part 604 of the rules of this court (22 NYCRR), deals with "Court Decorum", and states in 22 NYCRR 604.2, in pertinent part:

"(a) *Exercise of the summary contempt power.*

"(1) The power of the court to punish summarily contempt committed in its immediate view and presence shall be exercised only in exceptional and necessitous circumstances, as follows:

"(i) Where the offending conduct either

"(a) disrupts or threatens to disrupt proceedings actually in progress; or

"(b) destroys or undermines or tends seriously to destroy or undermine the dignity and authority of the court in a manner and to the extent that it appears unlikely that the court will be able to continue to conduct its normal business in an appropriate way; and

"(ii) The court reasonably believes that a prompt summary

adjudication of contempt may aid in maintaining or restoring and maintaining proper order and decorum.

"(2) Wherever practical punishment should be determined and imposed at the time of the adjudication of contempt. * * *

"(3) Before summary adjudication of contempt the accused shall be given a reasonable opportunity to make a statement in his defense or in extenuation of his conduct."

It is well-established law that justification for a court's power to summarily punish a contempt, committed in its immediate view and presence, is based upon the need to preserve order in the courtroom, so that the court can conduct its normal business. In *Cooke v United States* (267 US 517, 534 [1925]) the United States Supreme Court stated "the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court". Further, the Court of Appeals, in *Matter of Katz v Murtagh* (28 NY2d 234, 238 [1971]) stated "[i]t is the need for the preservation of the immediate order in the courtroom which justifies the summary procedure—one so summary that the right and need for an evidentiary hearing, counsel, opportunity for adjournment, reference to another Judge, and the like, are not allowable because it would be entirely frustrative of the maintenance of order".

Our examination of the transcript of the December 20, 1990 proceeding, in the Part 59 courtroom, unequivocally indicates that petitioner, although informed by the respondent Justice that there would be neither oral argument nor an evidentiary hearing concerning the motion, and that the Clerk had been directed to "Call the next case", wilfully disobeyed that court order, by exclaiming to the respondent Justice "You have exhibited what your partisanship is. You shouldn't be sitting in court. You are a disgrace to the bench".

Based upon the legal authority, *supra*, we find respondent Justice was justified in instantly responding to restore "proper order and decorum" in the courtroom, since the petitioner's disorderly, contemptuous, and insolent behavior, displayed in open court, in the immediate view and presence of respondent Justice, resulted in disrupting a calendar call, and tended to seriously "undermine the dignity and authority of the court in a manner and to the extent that it [appeared] unlikely that the court [would] be able to continue to conduct its normal business in an appropriate way" *(see,* 22 NYCRR 604.2 [a] [1] [i] [b]).

Further, we find that, after holding petitioner in summary criminal contempt, respondent Justice, in accordance with the rules of this court, prior to imposing punishment "at the time of the adjudication of contempt", gave the petitioner "a reasonable opportunity to make a statement in his defense or in extenuation of his conduct" *(see,* 22 NYCRR 604.2 [a] [2], [3]). However, instead of explaining his conduct, petitioner chose to continue to disobey respondent Justice's order, and to contemptuously and insolently argue the motion.

Although the dissent does not dispute that petitioner's conduct was contemptuous *(see,* dissent, at 152), the dissent, upon the basis of the authority of *Matter of Breitbart v Galligan* (135 AD2d 323 [1st Dept 1988]) contends that there was no necessity for the respondent Justice to summarily punish petitioner.

Following our comparison of the facts in *Matter of Breitbart v Galligan (supra)* to the facts in the instant case, we find that the *Matter of Breitbart v Galligan* case is not applicable, since, *inter alia,* (1) unlike in the instant case, where petitioner's misconduct disrupted a calendar call, and directly tended to interrupt the court's business, involving a number of cases, in *Matter of Breitbart v Galligan,* the misconduct occurred during a trial, outside the presence of the jury, and that trial was the only matter before that court, and (2) unlike in the instant case, where respondent Justice imposed punishment summarily, to restore order, so that the court could continue its normal business, in *Matter of Breitbart v Galligan (supra,* at 325) punishment was deferred "until the end of the trial".

The dissent seems to argue that since the length of time involved in the contemptuous conduct was brief, it should be significant to our consideration. Here, although the nature and content of petitioner's contemptuous language may have been brief in duration, it clearly was contumacious, and clearly violated both Judiciary Law § 750 (A) as well as section 604.2 of the rules of this court (22 NYCRR).

Based upon our analysis, *supra,* we confirm the order of summary contempt.

Accordingly, order, Supreme Court, New York County (Thomas B. Galligan, J.), entered December 21, 1990, which found petitioner attorney guilty of summary criminal contempt, and imposed a sentence of a $250 fine or 30 days in jail, is confirmed, the application, pursuant to CPLR article 78, is denied, and the proceeding is dismissed, without costs.

WALLACH, J. (dissenting). I respectfully dissent, not on the ground that counsel's conduct fell short of contumacious behavior, but because the record lacks proof of what we have held to be an additional essential element of the crime of criminal contempt: namely, that, in the language of 22 NYCRR 604.2 (a) (1) (i), the conduct complained of either "disrupts or threatens to disrupt proceedings actually in progress" or that the conduct undermines the dignity of the court to the extent "it appears unlikely that the court will be able to continue to conduct its normal business in an appropriate way". This provided the fundamental rationale of our decision in *Matter of Breitbart v Galligan* (135 AD2d 323), where we vacated a contempt conviction citing a similar failure of proof, despite the equally egregious character of the attorney's attack on the court there. The mere fact that in *Breitbart* the trial court deferred the imposition of sentence to the end of the case provides a distinction without a difference in addressing the instant issue. Neither in *Breitbart,* nor in this matter, were we asked to review the penalty imposed, nor the manner of its imposition. In any event, the contempt ruling before us now was likewise imposed at the "end" of the motion proceedings, and indeed may be said to have decisively ended them.

Long-standing jurisprudence establishes that "[a]n obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest." *(Ex parte Hudgings,* 249 US 378, 383; *see, In re McConnell,* 370 US 230; *In re Michael,* 326 US 224, 227.) Injury to the sensibilities of the offended Judge is not the test *(In re Little,* 404 US 553, 554; *Craig v Harney,* 331 US 367, 376; *Offutt v United States,* 348 US 11, 14).

The locus in quo of the alleged crime was at the call of a motion calendar at Criminal Term. The transcript of the entire transaction consists of three pages and could have consumed no more than the same number of minutes. Two thirds of the colloquy was routine and unexceptional; the contemptuous remark appears at page 3. Just before it the Judge issued a direction to "call the next case." There is no showing of any obstruction in the hearing of the next case, or, for that matter, in the disposition of the pending motion in this case. On this record it would appear that the good ship Justice sailed serenely on, without a one-degree compass point deviation from its appointed course. Additional evidence is required to support any finding to the contrary.

For the reasons stated, I would grant the petition and vacate the adjudication of summary contempt, without prejudice to renewal of contempt proceedings at a plenary hearing before another Justice.

SULLIVAN, J. P., KUPFERMAN, ROSS and SMITH, JJ., concur in a Per Curiam opinion; WALLACH, J., dissents in a separate opinion.

Application in the nature of a writ of prohibition, unanimously denied and the proceeding dismissed, without costs.