[818 NYS2d 506]

In the Matter of STEPHEN CARUSO, Petitioner, v WILLIAM A. WETZEL, Respondent.

First Department, July 20, 2006

**APPEARANCES OF COUNSEL**

*Stephen Caruso*, petitioner pro se.

*Eliot Spitzer, Attorney General*, New York City (*Charles F. Sanders* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

Petitioner pro se brings this CPLR article 78 proceeding to vacate an order finding him in summary contempt and imposing a fine of $1,000. On June 30, 2005, during a voir dire to determine the jury panel in a criminal proceeding—a kidnapping case in which the victim was allegedly forced into a car at gunpoint—petitioner, a prospective juror, was asked whether he could be an impartial juror. The following exchange took place:

"[PETITIONER]: I'm not going to be fair and impartial in this case. I have been held up three times at gunpoint. One time almost identical, sir, to this.

"THE COURT: You would judge the case on what happened to you even if you were satisfied he was not guilty, you would vote on what happened to you, right?

"[PETITIONER]: I am already looking at him, I think he is a 'scumbag.'

"THE COURT: First of all, that is an insult not only to him, . . . to me, and the other people in the room. What do you do [for] a living?

"[PETITIONER]: What does that matter?

When petitioner failed to respond, the court said, "Put down not served." When petitioner asked, "What do you mean not served?" the court directed him to "[j]ust leave the room." At

that point, petitioner left his seat and approached the bench. After twice being ordered by a court officer to step out, petitioner, at the court's direction, was escorted from the courtroom. At 3:30 that afternoon, petitioner returned to the courtroom, at the court's direction, at which time he was ordered to return the next morning to show cause why he should not be held in criminal contempt pursuant to Judiciary Law § 750 (A) (1). The court urged him to appear with counsel.

The next day, petitioner appeared, accompanied by counsel. After the court denied counsel's request to permit petitioner to apologize prior to the court's hearing the contempt or, in the alternative, to proceed with the matter by notice and charges followed by a hearing, counsel argued that petitioner was being honest in his response to the voir dire and that his use of the word "scumbag," while perhaps inappropriate, was not intended to disrupt the proceeding and did not rise to the level of contempt. Petitioner himself addressed the court and stated that in "hindsight," he should not have used "that choice of words" and that he had not intended to be disruptive.

The court found petitioner in contempt. After noting there had been 30 prospective jurors present in the courtroom during jury selection the previous day, the court found that petitioner, "standing up in a very arrogant tone of voice,"* had said, "I'm already looking at him, I think he is a 'scumbag.' " The court stated: "Given the seriousness, importance of our judicial process, to stand up and make a public accusation, using such pejorative vulgarity toward the defendant in a Court room is clearly disorderly[,] contemptuous or insolent behavior."

The court further stated that petitioner's behavior "caused a serious breach in the jury selection process" and that " [e]ach juror had to be voir dired separately" as to whether petitioner's accusation affected their ability to be fair and impartial. The court noted that as a result of this outburst, defense counsel in the criminal proceeding was forced to consider additional remedies to pursue on behalf of his client, including dismissal of the jury panel. On July 18, petitioner, with counsel, appeared for sentencing. The court imposed a fine of $1,000 and issued an order "Punishing Contempt Summarily" pursuant to Judiciary Law § 750 (A) (1).

Section 750 (A) (1) permits a court to punish, for criminal contempt, a person who commits certain acts, including

---

* The court stated later that petitioner had "holler[ed] out [the statement] at the top of his lungs."

"[d]isorderly, contemptuous, or insolent behavior, committed during [the court's] sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority." A contempt committed in the court's "immediate view and presence" may be punished summarily (Judiciary Law § 751 [1]; § 755).

With respect to the exercise of the summary contempt power, the rules governing decorum within the courts of the First Judicial Department provide as follows (22 NYCRR 604.2 [a] [1]):

> "The power of the court to punish summarily contempt committed in its immediate view and presence shall be exercised only in exceptional and necessitous circumstances, as follows:
>
> "(i) Where the offending conduct either
>
> "(*a*) disrupts or threatens to disrupt proceedings actually in progress; or
>
> "(*b*) destroys or undermines or tends seriously to destroy or undermine the dignity and authority of the court in a manner and to the extent that it appears unlikely that the court will be able to continue to conduct its normal business in an appropriate way; and
>
> "(ii) The court reasonably believes that a prompt summary adjudication of contempt may aid in maintaining or restoring and maintaining proper order and decorum."

■ It is well established that a court's power to punish a contempt summarily is justified by the need to preserve order in the courtroom so that the court can conduct its normal business (*Matter of Kunstler v Galligan*, 168 AD2d 146, 150 [1991], *affd* 79 NY2d 775 [1991]; *Matter of Katz v Murtagh*, 28 NY2d 234, 238 [1971]). Applying these standards to this proceeding, we conclude that petitioner's public and vulgar condemnation of the defendant in a criminal case, "in a very arrogant tone of voice" before the entire prospective jury panel, followed by his defiant behavior in approaching the bench without permission and failing to leave the courtroom despite repeated demands by the court and court officer or officers, constituted contempt. As the court noted, petitioner's "comments made in open Court in their entirety constitute the basis for the contempt." Thus, the

court did not limit its judicial response to only one comment, i.e., the "scumbag" statement, but to the entirety of petitioner's conduct, which included both the statement and his subsequent comments and confrontation with the court. This contemptuous and insolent behavior, committed during the court's sitting, in its immediate view and presence, directly tended to, and in fact did, interrupt its proceedings (Judiciary Law § 750 [A] [1]; 22 NYCRR 604.2 [a] [1] [i] [a]) to the extent that the court had to question the jurors separately to determine the effect of petitioner's outburst on their ability to serve impartially.

The delay between the contemptuous conduct and the finding of contempt does not, as argued, deprive the court of power to make a summary contempt adjudication. That an immediate exercise of the summary contempt power is permitted does not mean that such immediacy is compelled, where to do so would unduly interfere with the proceedings in which the conduct occurred (*Sacher v United States,* 343 US 1, 9-10 [1952] [Court upheld summary adjudication of contempt made against attorneys and a defendant in a criminal trial after trial concluded]; *see also United States v Galante,* 298 F2d 72, 76 [2d Cir 1962] [permissible to postpone exercise of summary contempt power for six weeks, until end of trial, rather than risk prejudicing the completion of trial]).

The offending conduct at issue in this proceeding and the circumstances under which it took place provide ample basis for a "reasonabl[e] belie[f] that a prompt summary adjudication of contempt may aid in maintaining or restoring and maintaining proper order and decorum" (22 NYCRR 604.2 [a] [1] [ii]). The brief one-day delay between petitioner's conduct and the contempt adjudication does not require a contrary conclusion under the circumstances of this case, where an immediate exercise of the contempt power, which would have required the court to give petitioner the opportunity to make a statement (22 NYCRR 604.2 [a] [3]), would have disrupted the trial even further and delayed a determination of the effect on the jurors of petitioner's conduct (*cf. Matter of Breitbart v Galligan,* 135 AD2d 323, 325 [1988]).

■ There is no merit to petitioner's argument that the court should have recused itself. Since the contempt here was not "of such a personal character as to indicate virtual impossibility of detached evaluation of the event" (*Matter of Katz v Murtagh, supra,* 28 NY2d at 239), there was no need for disqualification. Nor is this case similar to *Taylor v Hayes* (418 US 488 [1974]),

upon which petitioner relies. There, during the course of a "turbulent" murder trial, the trial court, on nine different occasions, informed the attorney for one of the defendants that he was in contempt (418 US at 490). The Supreme Court held that the contempt adjudication should have been made by another judge because the court "bec[a]me embroiled in a running controversy with petitioner . . . [and] as the trial progressed, there was a mounting display of an unfavorable personal attitude toward petitioner" (418 US at 501).

Finally, petitioner argues that upholding the contempt finding violates public policy because it would discourage potential jurors from speaking honestly and would subject to a contempt citation those who are unable to articulate their inability to act impartially. This is abject nonsense. As the court stated in imposing sentence on petitioner, this proceeding

> "is most definitely not about a juror being candid, open or honest [or a]bout his ability to be fair and impartial. It is about an insulting, demeaning invective spewed at a defendant. It is an affront to our criminal justice system. . . . [T]o allow prospective jurors or anyone else to verbally debase a defendant on trial is in absolute conflict with our cherished constitutional beliefs and the presumption of innocence and the right to a fair trial."

Accordingly, the order of the Supreme Court, New York County (William A. Wetzel, J.), entered on or about July 18, 2005, summarily adjudicating petitioner in contempt pursuant to Judiciary Law § 750 (A) (1) and imposing a fine in the amount of $1,000, should be confirmed, the petition pursuant to CPLR article 78 denied, and the proceeding dismissed, without costs or disbursements.

MAZZARELLI, J.P., SAXE, NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 18, 2005, confirmed, the petition denied and the proceeding dismissed, without costs or disbursements.