■ Zahid J. Ullah, Appellant, v Farrin B. Entezari-Ullah, Respondent. [836 NYS2d 18]—

Order, Supreme Court, New York County (Saralee Evans, J.), entered December 6, 2005, which, on defendant wife's application, adjudged plaintiff husband in civil contempt for failing to comply with an August 2005 interim order to pay outstanding mortgage arrears and tuition by January 13, 2006, and sentenced him to 15 days in jail if he failed to purge the contempt, unanimously reversed, on the law, without costs or disbursements, and the matter remanded for a new hearing on defendant's contempt motion, consistent with this decision.

The parties, married in 1982, have three children. The husband commenced this divorce action in February 2001. On November 11, 2002, the parties, each represented by counsel, entered into a 55-page stipulation of settlement to be incorporated but not merged in any subsequent divorce decree. The stipulation provided that upon execution of the agreement, or as soon thereafter as practical, the parties would execute all documents necessary to transfer title of the two condominiums held by them as tenants by the entirety, one to each of them individually, subject to existing mortgages, with the wife to receive the condominium unit with the larger value. By January 1, 2007, the apartments were to be reconfigured into two separate units, with each party responsible for all costs and expenses related to his/her unit. Until the division of the apartments into separate units, the wife was entitled to exclusive use and occupancy and the husband, as part of his maintenance and support obligations, would "directly pay [certain] expenses" related to the apartments, including interest and amortization of both mortgages, real estate taxes, common charges and homeowner's insurance, as well as utility and fuel charges. The wife agreed that until that time she would be responsible for all other expenses related to the apartments. The husband also agreed to pay a car loan and car insurance until the loan note was satisfied.

As for the children, the husband agreed to pay $3,000 per month for child support, $1,600 of which was payable toward the common charges for one of the units. He also agreed to pay for certain "Child Related Activities" (after school activities, tutoring and organized summer activities) "[p]rovided he consents to same, such consent to be dependent upon [his] financial circumstances." He agreed to pay for private school tuition as well, "if his income is sufficient to cover the costs" thereof, but the agreement provided that commencing in the

2002/2003 school year, the children would not be enrolled in private school without his consent, such consent again dependent on his financial circumstances.

Since the husband's income was then $120,000 per year, the stipulation qualified his obligation to pay college tuition and related expenses by requiring that each child apply for scholarships, loans, grants or fellowships and providing that the parties "jointly decide which college each child shall attend . . . bearing in mind . . . the [husband's] financial circumstances." Each party's consent to the choice of any college for the children was required, "such consent not to be unreasonably withheld and to be dependent on the [husband's] financial circumstances."

The stipulation provided that the parties intended it "to constitute an agreement pursuant to Domestic Relations Law Section 236, Part B 3" and "to be in lieu of each of their respective rights, pursuant to all aspects of" that statute. The stipulation further provided that it could not be amended or deemed amended "except by an agreement in writing duly subscribed and acknowledged with the same formality as this Agreement," in which each party's signature was duly notarized.

Not long after the agreement's execution, the wife sought to enforce the support provisions. In a September 12, 2003 order, Supreme Court directed the husband, now appearing pro se, to pay the condominium charges. When the wife moved to compel enforcement of the order, the husband conceded his failure to pay. Without producing any financial documentation, he argued that the wife's refusal to cooperate due to her mental instability was driving him into debt and causing his default. In an order dated January 13, 2004—not the order on appeal—the court, after finding that the husband had failed to make a preliminary showing of his financial inability, found him in civil contempt, which he could purge by paying the mortgage and real estate tax arrears. The court also awarded money judgments for child support arrears and add-ons, including tuition, and directed the husband to pay any spousal arrears and outstanding utility bills by January 30, 2004.

The judgment of divorce, accompanied by the stipulation, was filed on May 12, 2004. Thereafter, on June 16, 2004, the parties entered into what they have considered a modification of the stipulation, containing an affirmation signed by the husband, witnessed and notarized, asserting that he had neither income nor access to any income or assets, and in fact had a negative net worth. The modification did not contain the wife's signature and does not reflect that either side was represented by counsel.

The modification provided, in relevant part, that the wife would refinance one if not both of the units for an amount up to $500,000 and that she would become sole owner of both, although the husband would continue to pay the "maintenance and taxes, mortgage, and electricity . . . indefinitely."

On or about July 8, 2005, the wife moved, inter alia, to hold the husband to the promised payments under the stipulation and the purported modification agreement. She attached 250 pages of documentary support, consisting of handwritten notes and photocopies of receipts and bills. The husband opposed by alleging insufficient income to pay his obligations, claiming his lost income was the direct result of the wife's tortious conduct in harassing his employers and potential employers. Without benefit of counsel, the husband failed to cross-move for a reduction in his maintenance or support obligations. The motion court refused to vacate the stipulation and determined that the wife's only avenue of redress was to enforce it.

A hearing on the wife's motion to enforce the stipulation was commenced on August 15, 2005, to determine the extent of the husband's obligations and compliance therewith, but was adjourned to September 19 to afford the parties an opportunity to submit documentary evidence. On August 19, the court issued an interim order to "meet the immediate needs" of the wife and the children, directing the husband to pay within 15 days all mortgage arrears for the two apartments, outstanding electric bills, common charges, tuition for Emory University, University of Massachusetts and Columbia Grammar School and Preparatory School in specified amounts. In so ruling, the court relied upon provisions of the parties' stipulation and the modification thereto and, in addition, cited the January 13, 2004 order of another Justice as to the husband's responsibility for the payment of private school tuition.

On September 19, 2005, the wife moved for an order of contempt for the husband's failure to comply with the August 19 interim order, seeking his immediate incarceration and a direction that payments owed be made directly to her "rather than making a cash judgment which will go against my assets." In the alternative, the wife requested that "[i]f the judge can not make him" pay her "directly immediately," she "be removed as the prime resident immediately. [The husband] is to become the sole responsible parent and I will have to be excused from keeping the children in my home."

In opposition, the husband continued to insist that his financial situation had changed since entering into the 2002 stipulation. He offered documentation to support his claim that

in addition to the $97,000 paid to the wife at the time of the refinancing, he had made payments in excess of $114,000 to her and the children since August 3, 2004. He further argued that he was not responsible for the mandated tuition payments because of the children's failure to seek financial aid, as required under the stipulation, and his own financial circumstances. Citing the latter, the husband sought a reduction in his maintenance and child support obligations. He also requested that the court grant him custody of the children and "force the [wife] to get supervised psychiatric treatment."

At the hearing, the husband conceded that he had made no payments toward the mortgage arrears or common charges since the commencement of the enforcement proceeding despite the interim order and the commencement of foreclosure proceedings commenced by two mortgage holders. He claimed to have spent the $100,000 from the refinancing on family expenses and in cash payments to the wife. He did not, however, offer any documentation as to the disposition of the $1.5 million in liquid assets listed on his net worth statement filed in February 2001. The hearing ended prematurely as a result of the wife's emotional outbursts that culminated in her abrupt departure from the courtroom.

In an order dated December 2, 2005, the court determined that the husband was in civil contempt of the August 2005 order based on his admitted noncompliance, finding that he "violated a clear and unequivocal court order, thereby impeding and seriously prejudicing [the wife's] rights" and rejecting, for lack of documentation, his claims of inability to pay. The court noted the fact that the wife and the parties' unemancipated daughter were in imminent danger of eviction. As to the modification agreement, the court stated that it "appears to have been drafted without benefit of counsel." Notwithstanding, the court found that "[t]he parties' agreement as revised provided that he 'will make payments towards maintenance, taxes, mortgage and electricity of both apartments indefinitely.' "

The court further found that the college tuition payment obligations were not contingent on the children's seeking financial aid but were rather the result of a court order to pay the outstanding tuition due for the fall semester and held that the husband could purge his contempt by paying 100% of the mortgage arrears and the common charges on both units and the outstanding tuition amounts due by January 13, 2006 or be sentenced to 15 days in jail. This Court stayed the contempt order pending disposition of the appeal. We reverse.

A respondent in a civil contempt proceeding facing the possibility of the imposition of a term of incarceration, however short, is entitled to the assignment of counsel upon a finding of indigence (*see Argersinger v Hamlin*, 407 US 25 [1972]; *Holmes v Holmes*, 89 AD2d 921 [1982] [order finding a party in contempt and directing his incarceration reversed where the court failed to determine whether he had the wherewithal to retain counsel]). Here, the record is silent as to whether the husband was, as he was entitled to be, advised of his right to counsel during the contempt proceeding (*Gifford v Gifford*, 223 AD2d 669 [1996]; *see also Matter of Kissel v Kissel*, 59 AD2d 1036 [1977]). It is the court's responsibility to advise such a respondent of the right to counsel of his own choosing, or assigned counsel where appropriate, before the commencement of a hearing or other proceedings (*Hickland v Hickland*, 56 AD2d 978, 980 [1977]; *see also Matter of Gaudette v Gaudette*, 263 AD2d 620, 621 [1999]). Thus, the matter should be remanded for a new hearing on the contempt motion and a determination as to whether the husband has his own counsel or qualifies for the appointment of assigned counsel thereat.

While the matter must go back for a new hearing and the appropriate determinations, we note that there is merit to the husband's argument that the hearing court erred in finding him in contempt for failing to pay the mortgage and common charge arrears on both apartments pursuant to the August 2005 interim order since it was based on the June 2004 modification, which was invalid because it was never judicially authorized. A divorce decree may be modified with respect to spousal support only in the manner provided by statute. No agreement by the parties has any effect on the decree unless made effective by judicial approval (*see Lynn v Lynn*, 302 NY 193, 203 [1951], *cert denied* 342 US 849 [1951]; *Kraunz v Kraunz*, 293 NY 152, 156 [1944]; *Matter of Zamjohn v Zamjohn*, 158 AD2d 895 [1990]). While the husband did not appeal the August 2005 interim order, upon which the finding of contempt is based, public policy dictates that judicial authorization be obtained before courts give recognition to modified matrimonial agreements, especially where, as here, a party agrees to more stringent obligations than those in the original agreement. Furthermore, the hearing court failed to address or consider the settlement's provision that the husband's obligations as to the children's educational expenses were qualified by his financial circumstances and other conditions, such as the children's seeking scholarships and other types of tuition aid. Concur—Sullivan, J.P., Williams, Buckley, Catterson and McGuire, JJ.