This is a final and appealable order.

**In re Juror Steven Phillip FREED.**

**United States of America**

**v.**

**Mustafa Abdul–Qadir Al–Din Walee Abdulazeem Al–Din Charles Kunta Lewis, Sr. Ralphael Remier Crenshaw.**

**Case No. 1:11–CR–97.**

United States District Court,
W.D. Michigan,
Southern Division.

July 31, 2013.

Scott Allen Mertens, Mertens Laxton and Clement PLLC, Lansing, MI, for Defendant Mustafa Abdul–Qadir Al–Din.

Scott Graham, Scott Graham PLLC, Portage, MI, for Defendant Walee Abdulazeem Al–Din.

Jeffrey J. O'Hara, Grand Rapids, MI, for Defendant Charles Kunta Lewis, Sr.

Paul Mitchell, Paul L. Mitchell PLLC, Grand Rapids, MI, for Defendant Ralphael Remier Crenshaw.

Timothy P. VerHey, Brian K. Delaney, U.S. Attorney, Grand Rapids, MI, for United States.

### *ORDER*

ROBERT J. JONKER, District Judge.

This Civil Contempt Order involves Juror Steven Phillip Freed, Juror Number 02–0084. The Court summoned Mr. Freed by standard juror summons. Mr. Freed appeared as part of the jury venire, responded to questions from the Court and counsel for the parties and was ultimately selected to sit as one of two alternate jurors for an estimated three week trial. When the Court instructed the jurors to stand and be sworn, Mr. Freed refused to stand. After entreaty from the Court, Mr. Freed did eventually stand, but he did not take the oath with this fellow jurors. When questioned by the Court, he persisted in his refusal to take the oath and submit to jury service as required by the original juror summons, by his ultimate selection to serve, and by the direct order of the Court. After consulting with counsel, the Court determined that it had no choice but to hold Mr. Freed in civil con-

tempt. The Court did so and remanded Mr. Freed to the Marshal. As of the close of business on jury selection day, the Marshal Service informed the Court that Mr. Freed was not interested in purging his contempt at the time, and so the Court arranged overnight lodging for Mr. Freed in Marshal custody. After consulting with counsel, the Court selected another juror to serve in the seat Mr. Freed was initially selected to occupy. The jury of twelve, with two alternates, was then sworn.

■ It is a basic proposition of law that parties must comply promptly with all orders and judgments of courts. See *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). Failure to do so may lead to contempt citation and sanctions.

■ A contempt finding is appropriate where a party shows by clear and convincing evidence that the litigant violated " 'a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.' " *Nat'l Labor Relations Bd. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987), (*quoting SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir.1981)); see also *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.1998) (*quoting Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir.1991)). Any sanction imposed for a civil contempt must have as its goal coercing compliance with the Court's orders or compensating for losses sustained because of the contempt, and not punishment for wrongdoing. *See Glover v. Johnson*, 199 F.3d 310, 313 (6th Cir.1999) (citing *TWM Manufacturing Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir.1983)).

In *International Union, United Mine Workers of America v. Bagwell*, the Supreme Court said that, "The paradigmatic coercive, civil contempt sanction, as set forth in *Gompers* [*v. Bucks Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911) ], involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.' " 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (emphasis added). The *Bagwell* Court went on to cite several other Supreme Court cases upholding imprisonment for civil contempt for either an indefinite term or a lengthy, fixed term. See, e.g., *Gompers*, 221 U.S. at 442, 31 S.Ct. 492 (recognizing that indefinite detention is not unlawful because contemnor "carries the keys of his prison in his own pocket" and can "end the sentence and discharge himself at any moment by doing what he had previously refused to do"); *McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 83 L.Ed. 1108 (1939) (upholding detention "until [witness] purges himself of contempt by obeying [court's] order" to testify); *Shillitani v. United States*, 384 U.S. 364, 370 n. 6, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (upholding as valid exercise of civil contempt authority "a determinate [2–year] sentence which includes a purge clause"). From these cases, it appears that the duration of the civil contempt power is co-extensive with the existence of the purpose.

■ The task of the Court is to apply these general principles to this unique fact pattern. It is perhaps not surprising that the Court has found a dearth of case law on civil contempt for jurors. That is undoubtedly because the Court is blessed with citizens that routinely fulfill their civic duty to serve, when called upon to do so, even when the service is difficult or inconvenient. In fact, in the experience of the Court and the six attorneys present in the Courtroom at the time of the contempt, no one was personally aware of any precedent

for this kind of juror behavior. The Court's research has uncovered only one parallel case, *In re Schramm,* 432 F.Supp.2d 711 (E.D.Mich.2006). In that case, William Schramm was summoned as part of a grand jury venire. The court explained to Schramm the purpose of the grand jury and the time commitment involved in serving, then administered an oath requiring the prospective jurors to "truthfully answer the questions put to [them] touching upon [their] qualifications to sit as a grand juror." *Id.* at 712. Schramm took the oath and participated in voir dire. During voir dire, Schramm denied having any philosophical beliefs that would be incompatible with jury service or having any medical problems that would keep him from serving. When the court asked the prospective grand jurors whether they knew of any other reason why they might not be able "to sit and be a fair and impartial person to sit and listen to the evidence," Schramm said nothing. *Id.* Nor did Schramm submit a request to the jury clerk seeking to be excused or deferred for financial reasons. As a result, Schramm remained on the grand jury panel and ultimately became a sitting member of the grand jury. After a few days of grand jury service, however, Schramm notified the court that he should be dismissed from the grand jury because he did not respect law enforcement or the trial process, was biased against racial minority groups, would suffer severe financial hardship if forced to serve on the grand jury, and was generally not capable of being a fair and impartial juror. When the court invited Schramm to explain why he had not expressed any of those concerns when specifically asked to do so at voir dire, Schramm replied that the court had made no such inquiries. The court ultimately concluded that Schramm was being untruthful and excused him from grand jury service, further ordering that Schramm "report to the courthouse every day that the grand jury

reported, but that he would no longer be a member of the grand jury." *Id.* at 713. At that point, Schramm indicated for the first time that he was taking medications and that the court's order would be deleterious to his health. When asked for documentation of his condition, however, Schramm was not able to offer any convincing evidence. Consequently, the court continued to enforce its order from January 8, 2006 through May 4, 2006.

In the Court's view, *Schramm* points the way to the proper application of civil contempt principles in this situation. The fundamental contempt of Court that Mr. Freed displayed in open Court was his refusal to submit to the ordinary course of jury service as required by the juror summons, by his ultimate selection to serve on the jury, and by direct order of the Court. In his case, as a person selected from the venire to serve, faithful service means sitting on the jury until it is discharged from service upon termination of the case, which is currently estimated to run three weeks. The immediate contempt of Court that revealed this fundamental contempt was Mr. Freed's refusal to be sworn as a juror for the case, because he hoped this would cut his duration of service short and allow him to avoid coming to Court for three weeks of service. A proper purge of the contempt in this case will require at least two things: 1) Mr. Freed's willingness to submit to the oath (or affirmation) required of empaneled jurors (modified to account for his inability to actually serve on the jury given his contumacious conduct and ensuing absence from the proceedings); and 2) Mr. Freed's willingness to be present at Court for the duration of the trial, to the same extent other jurors are required to be present. Whenever Mr. Freed announces his willingness to purge the contempt in this way, the Court will readily free him from Marshal custody and allow him the same level of freedom afforded

every other empaneled juror. Unless and until that occurs, the Court will hold Mr. Freed in custody until the jury in the case is discharged. Upon discharge of the jury, there will be no further coercive force necessary or appropriate, and Mr. Freed will be free to go, just as his fellow jurors, subject to any criminal contempt proceedings that the government may or may not choose to bring.

This approach, similar to the one followed by the court in *Schramm*, allows Mr. Freed to free himself from Marshal custody as soon as he is willing to do the things required of any other juror selected to serve. This will require Mr. Freed to purge his contempt of refusing to serve as required on a jury to which he was selected in the only way possible—by ensuring that he is physically present in Court to the same extent he would have been had he originally submitted to the jury service for which he was duly selected.

**IT IS SO ORDERED.**